UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DELVI RIOS NAVA,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-03108-JNW

ORDER GRANTING HABEAS CORPUS PETITION AND PERMANENT INJUNCTION

## 1. INTRODUCTION

Delvi Javier Rios Nava is a Venezuelan asylum applicant who was detained on entry and paroled into the United States around September 6, 2022. For nearly four years, he built a life for himself in Utah where he met his partner, had a child, and worked as a delivery driver to provide for his family. On or about June 26, 2026, Immigration and Customs Enforcement (ICE) re-detained him without notice or an opportunity to be heard, and later transferred him to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"). Rios Nava filed a petition for writ of habeas corpus and a permanent injunction. Dkt. No 1. For the reasons below, the habeas petition and permanent injunction are GRANTED.

## 2. BACKGROUND

Rios Nava fled Venezuela because he feared for his safety after leaving the Venezuelan military. Dkt. No. 1-2 ¶ 1. He entered the United States on or about September 6, 2022, and presented himself to the Department of Homeland Security (DHS), which detained him for about a day. *Id.* ¶ 2. ICE released Rios Nava on parole until November 2022 and officials asked him to present himself at an ICE office in Utah–where he planned to live with a family friend–in October 2022. *Id.*; Dkt. No. 6-1 at 2. Rios Nava attended the ICE check-in, and the officers told him he would not be scheduled for another appointment but to update ICE if he moved. Dkt. No. 1-2 ¶ 3. No ICE or other immigration official ever informed him of travel restrictions within the United States. *Id.* ¶ 9. Rios Nava moved only once in early 2024 and he updated his address with ICE accordingly. *Id.* ¶ 5.

In Utah, Rios Nava met his partner, and their U.S. citizen daughter was born on July 3, 2024. *Id.* ¶ 4. In October 2023, he applied for Temporary Protected Status (TPS), and in March 2024, he applied for asylum. *Id.* ¶ 6; Dkt. No. 5 ¶ 6, 9. Based on those applications, the Government granted his work authorization, and he began working as a delivery driver. Dkt. No. 1-2 ¶ 6. In December 2024, Rios Nava had a verbal disagreement with his roommate that resulted in a misdemeanor intoxication conviction. *Id.* ¶ 7. He has no other criminal record. *Id.* In March 2026, Rios Nava began driving to Oregon for deliveries because the pay was significantly better to support his family. *Id.* ¶ 9.

On or about June 26, 2026, ICE officers arrested Rios Nava in Oregon where he was getting ready to fulfill a delivery request. *Id.* ¶ 10. He was eventually

transferred to ICE custody at NWIPC, where ICE has detained him since. *Id.* ¶ 11. The Government did not provide any notice or hearing before his re-detention. *Id.* On August 27, 2026, an Immigration Judge (IJ) issued an order of removal. *Id.* ¶ 13. Rios Nava intends to appeal that decision. *Id.*

## 3. DISCUSSION

### 3.1 Legal standards.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

In addition to habeas relief, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also

invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

A plaintiff seeking a permanent injunction must demonstrate "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 3.2 Revocation of release and re-detention must comport with due process, regardless of the detention statute that applies.

The parties dispute the statutory basis for Rios Nava's detention. Rios Nava contends he is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing; the Government contends he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). The Court need not resolve that dispute because the Due Process Clause applies to Rios Nava's re-detention regardless of which statute governs his custody. Even assuming the Government is correct that § 1225(b)(2)(A) applies, the constitutional question remains: was Rios Nava deprived of his liberty without due

process when ICE revoked his release and re-detained him without notice or a hearing? Courts in this District have consistently answered yes.[1]

The Government argues that because Rios Nava was paroled and never admitted, he has only the process Congress provided by statute. Dkt. No. 4 at 7–8 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107, 138–40 (2020)). The Ninth Circuit has rejected that reading of *Thuraissigiam*, which it described as "an admission, not a detention, case." *Padilla v. U.S. Immigr. & Customs Enf't*, No. 24-2801, --- F.4th ----, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026). As the court explained, "[a]dmission and detention occupy fundamentally different positions in our legal order," *id.* at *16, so *Thuraissigiam* does not bar a noncitizen's

---

[1] *See, e.g.*, *Osuna Benitez v. Hermosillo*, No. 2:25-cv-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (citing *Zadvydas v. Davis*, 533 U.S. at 693); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'"); *Arrioja Blanco, et al. v. Hermosillo, et al.*, No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026) ("Courts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies."); *Bealter Reyes et al. v. Hermosillo et al.*, No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statue."); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected.").

due process challenge to his detention—even when he is subject to mandatory detention under § 1225(b), *id.* at *19.

### 3.3 Rios Nava's re-detention without notice and a pre-deprivation hearing violates procedural due process.

To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. *Id.* This Court has previously found no reason to distinguish parole cases from similar cases in which ICE revoked orders of supervision without providing pre-deprivation notice or an opportunity to be heard. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026); *Gomez Candelo v. Noem*, No. 2:26-CV-00576-JNW, 2026 WL 879049, at *4 (W.D. Wash. Mar. 31, 2026). All three *Mathews* factors favor Rios Nava.

First, his private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Rios Nava lived in the community for almost four years. He built a full life in Utah where he made friends, met his partner, and had a child who is a U.S. citizen. Dkt. No. 1-2 ¶ 4. He has asylum applications he intends to pursue on appeal. *Id.* ¶ 13; Dkt. No. 6-5. Rios Nava's liberty interest exists even when release is conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (collecting cases); *see also Dieng*

*v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *7 (W.D. Wash. Feb. 13, 2026) ("A petitioner's liberty interest [does] not expire along with his parole.") (citation modified). The Government contends his interest is lessened because he is an "unadmitted parolee" who now has an order of removal, but their arguments misstate the law and the cases they cite are inapposite. Regardless, it concedes this factor weighs in Rios Nava's favor. Dkt. 4 at 8.

Second, the risk of erroneous deprivation and value of additional procedures are high. The inaccuracies in the Government's briefing and declarations illustrate why. The Government argues that it detained Rios Nava because he had no lawful immigration status, Dkt. Nos. 5 ¶ 13; 6-3 at 2, and that a pre-deprivation hearing would not have changed the result due to his "unreported move to Oregon," expired TPS, and a Utah conviction. Dkt. No. 4 at 4, 8–9. But many of these assertions are disputed or incomplete. And while an IJ denied his applications for asylum and withholding, that decision came two months after his arrest, and Rios Nava intends to appeal it. Dkt. Nos. 1-2 ¶¶ 10, 13; 6-5.

As to the alleged unreported move, Rios Nava's sworn declaration states he traveled to Oregon only temporarily for work, while keeping the same Utah address he reported to ICE, where he lived with his partner and their daughter. Dkt. 1-2 ¶ 9. The Government offers no evidence that Rios Nava had an address in Oregon at all. And though the Government makes much of his conviction, the record shows only a misdemeanor for intoxication that resulted in a suspended $200 fine. Dkt. No. 6-2 at 4. Criminal history alone does not necessarily justify a finding of danger or flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011). Factual

disputes like these "should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court." *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *5, *6 (W.D. Wash. Nov. 25, 2025).

The Court also notes that it is not clear which parts of Deportation Officer Ian Bloom's declaration are based on his "personal" knowledge and which are based on his "professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS in the regular course of business." Dkt. No. 5 ¶ 2. Even assuming the declaration is admissible, its conclusory assertions underscore the risk of erroneous deprivation when no hearing is held.

The Government also argues that the removal proceedings supplied the process due. Dkt. No. 4 at 8–9. But those hearings decided whether Rios Nava may remain in the country, not whether he should be detained, and each came after his arrest. Though he asked an IJ to review his custody the day he was arrested, nothing in the record shows that review occurred. Dkt. No. 6-3 at 3. And the Notice to Appear that the Government says terminated his parole, Dkt. No. 4 at 3, was served after officers had already arrested him. Dkt. Nos. 5 ¶¶ 13, 16; 6-4 at 4. Notice given to someone already in custody is not notice before the deprivation.

And as other courts in this District have found, the fact "[t]hat the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026) (quoting *Ramirez*

*Tesara*, 800 F. Supp. 3d at 1136). The undisputed evidence shows the Government conducted no individualized analysis of Rios Nava's danger or flight risk before re-detaining him; it failed to consider his nearly four years of compliance with immigration requirements, pending asylum applications, and significant community and family ties, including his two-year-old U.S. citizen daughter.

Third, the Government's interest in re-detaining Rios Nava without a hearing is low. Nothing prevented ICE from scheduling a hearing before or after it became aware of his arrest record and alleged unreported address change. *See E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). And the Government's interest in removing noncitizens whose applications have been denied, Dkt. No. 4 at 9, "is not implicated here, where [Rios Nava's] *detention* is at issue—not [his] removal from the United States." *Espinoza Palacios*, 2026 WL 686138, at *8.

All *Mathews* factors favor Rios Nava and support finding that his detention violates procedural due process. *Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). It is undisputed that Rios Nava did not receive notice or a hearing before his re-detention. A "post-deprivation hearing cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Accordingly, his detention violates procedural due process, and he must be released.

Courts in this District and elsewhere have consistently reached the same conclusion. *See, e.g.*, *Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288,

at *1 (W.D. Wash. Dec. 11, 2025), *report and recommendation adopted*, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Ramierz Tesara*, 2025 WL 3288295, at *1, *6 (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1201–03 (W.D. Wash. 2025) (revocation of an OREC requires notice and a pre-deprivation hearing); *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *4 (W.D. Wash. Jan. 23, 2026) (revocation of an OSUP requires notice and a pre-deprivation hearing); *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088, at *3–5 (W.D. Wash. Jan. 9, 2026) ("The Government's redetention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution."). This case presents nothing that would warrant a different result.

**3.4 The Government must follow the law if it re-detains Rios Nava.**

Having found due process violations, the Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay,* 547 U.S. at 391.

Rios Nava suffered irreparable harm through the violation of his constitutional right to due process and almost three months of unlawful detention. He has been separated from his family for that entire time, causing his partner and their two-year-old daughter significant hardship. *See generally* Dkt. No. 1-2. Detention has also made it difficult to speak with his family and to get updates about his daughter's allergic reactions, which her doctors have been working to diagnose. *Id.* ¶ 11. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Rios Nava, as the injunction requires only that the Government comply with the Constitution before re-detaining him. And the public interest is served by an order prohibiting the Government from violating the Due Process Clause and ignoring the many cases that have found re-detention without notice or an opportunity to be heard is unlawful.

Rios Nava has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already arbitrarily detained him without due process, despite nearly four years in which he kept ICE informed of his address and pursued lawful status. This raises concerns that, absent injunctive relief, he may be subject to the same due process violation again. Moreover, for months, courts in this district have repeatedly found that the Government's conduct in revoking release and re-detaining noncitizens without pre-deprivation process is unconstitutional. The Government has chosen to "respectfully disagree" with those orders and to continue its current practices. Thus, the Court finds the Government

has expressed "an avowed intention to continue the challenged conduct." *Espinoza Palacios*, 2026 WL 686138, at *10 (citation modified).

Accordingly, the Court prohibits Rios Nava's re-detention unless the Government first provides written notice of the basis for the proposed re-detention and an Immigration Court hearing is held to determine whether detention is appropriate.

**3.5 The Government bears the burden of proof by clear and convincing evidence at any future pre-detention hearing Rios Nava has.**

Rios Nava also asks that at any future, pre-detention hearing in Immigration Court, the Government should bear the burden of proof by clear and convincing evidence. Dkt. No. 1 at 17.

The Court agrees with Rios Nava that a heightened evidentiary standard is appropriate in this case. The Government released him and then left him in the community for nearly four years. It is the Government that now seeks to reverse course and reimpose confinement. *See Espinoza Palacios*, 2026 WL 686138, at *10–11; *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025).

Numerous courts have adopted this procedural requirement to protect noncitizens' due process rights. *See, e.g., Espinoza*, 2025 WL 2581185, at *14; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034–36 (N.D. Cal. 2025); *Singh v. Noem, et al.*, No. 2:26-cv-00403-GJL, 2026 WL 555397, at *3 (W.D. Wash. Feb. 27, 2026); *Subham v. Noem*, No. C26-292-SKV, 2026 WL 497101, at *5 (W.D. Wash. Feb. 23, 2026); *Martinez Hernandez*, 2025 WL 2495767, at *13. And ultimately, "[s]ince it is the

government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Espinoza*, 2025 WL 2581185, at *14.

For these reasons, the Government must meet the clear and convincing evidentiary standard at any future pre-detention hearing for Rios Nava. Similarly, because Rios Nava was previously managed under less restrictive conditions of release–and without a GPS monitoring device–the Government must demonstrate that those alternatives to detention are no longer adequate before reimposing the most restrictive option. *See Luis Barraza Laguna et al. v. Julio Hernandez et al.*, No. 2:26-CV-00864-GJL, 2026 WL 2516736, at *2 (W.D. Wash. Aug. 14, 2026). So for the same reason, the Government may not place a GPS monitoring device on Rios Nava without first providing notice and a hearing.

## 4. CONCLUSION

Accordingly, the Court orders as follows.

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. The Government must RELEASE Rios Nava within TWENTY-FOUR (24) hours of this order, subject to the conditions of his most recent parole agreement.
3. Within FORTY-EIGHT (48) hours of this order, the Government must provide the Court with a status report confirming that Rios Nava has been released from custody and informing the Court of the date and time of his release.

4. On release, the Government must return Rios Nava's personal property, including personal identification and employment authorization documents (other than a passport). *See Zavala Sandoval v. Hernandez*, No. 2:26-CV-01198-JNW, 2026 WL 1661379, at *6 (W.D. Wash. June 9, 2026).

5. The Government is permanently enjoined from re-detaining Rios Nava, or placing an electronic GPS monitoring device on him, during the pendency of his removal proceeding absent written notice and a hearing prior to re-detention where it must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks.

6. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 25th day of September, 2026.

Jamal N. Whitehead
United States District Judge